**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| FERRELL JOHNSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 6:22-CV-00121-JCB-KNM |
| PALMER ADMINISTRATIVE | § | |
| SERVICES, INC., et al. | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**REPORT & RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Palmer Administrative Services, Inc.'s ("Palmer") Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (Doc. No. 8), Plaintiff's ("Johnson" or "Plaintiff") Response (Doc. No. 10), Palmer's Reply (Doc. No. 11), and Supplemental Briefings (Doc. Nos. 15, 16) as ordered by the Court (Doc. No. 14). Having considered the parties' arguments and the relevant law, the Court **RECOMMENDS** Palmer's Motion to Dismiss (Doc. No. 8) be **GRANTED-IN-PART** and **DENIED-IN-PART.**

## Background

Defendant Palmer sells extended vehicle service contracts.[1] Plaintiff asserts that he and the Class members received numerous artificial prerecorded voice messages on their cellular phones.[2] Plaintiff alleges that he received phone calls that played artificial or prerecorded voice messages

---

[1] Pl.'s Amend. Compl., Doc. No. 5, ¶ 18; Elzayn Decl., Doc. No. 8-1, ¶ 5.
[2] Doc. No. 5, ¶ 22.

advising him that his car warranty was going to expire.[3] Plaintiff alleges following the prompts that connected him to a live representative where he was solicited for Defendants' vehicle service contracts.[4] At that point, Plaintiff alleges he then purchased a vehicle service contract from Palmer and Vehicle Services.[5]

On April 4, 2022, Johnson filed a Complaint against Defendants Palmer and Vehicle Services ("Vehicle Services") alleging violations of the Telephone Consumer Protection Act ("TCPA") and TCPA regulations.[6] On May 16, 2022, Johnson filed a First Amended Class Action Complaint as the named Plaintiff against Palmer, Vehicle Services, and an unknown Defendant John Doe ("John Doe") on behalf of all persons injured by the Defendants' alleged violations under the TCPA, TCPA regulations, and the Texas Business and Commerce Code ("TBCC").[7] Plaintiff alleges the following six causes of action: (1) violation of 47 U.S.C. § 227(b) of the TCPA on behalf of the TCPA class; (2) violation of 47 CFR § 64.1200(d)(1) on behalf of the DNC class for failure to maintain written telemarketing policy; (3) violation of 47 CFR § 64.1200(d)(2) on behalf of the DNC class for failure to train telemarketing personnel; (4) violation of 47 CFR § 64.1200(d)(4) on behalf of the DNC class for failure to provide identifying information; (5) violation of TBCC § 305.053 on behalf of the TX class; and (6) violation of TBCC § 302.101 on behalf of the TX class for failure to obtain Texas registration certificate.[8]

According to Plaintiff, he received a letter from Vehicle Services[9] along with a Vehicle Services Agreement from Palmer[10] in the mail following his purchase with the live

---

[3] Doc. No. 5, ¶¶ 28-31; Johnson Decl., Doc. No. 10-1.
[4] *Id*.
[5] *Id*.
[6] Pl.'s Compl., Doc. No. 1.
[7] Doc. No. 5.
[8] *Id*. at 14-18.
[9] (Doc. No. 10-1, p. 5)
[10] (*Id*. at 6)

representative.[11] Thus, Plaintiff asserts that "there is evidence of an agency relationship that justifies imputing the contacts of the agent, Vehicle Services, to the principal, Palmer."[12] Plaintiff has attempted to serve Defendant Vehicle Services but has been unable to locate the state registration or the state registered agent and has not received a response.[13] Further, Plaintiff states that the address for Vehicle Services taken from the Palmer Service Agreement Plaintiff recieved is a UPS Store in Michigan.[14] Plaintiff also asserts that Vehicle Services is "merely a shell company with an endless history of complaints."[15] To that end, Plaintiff attaches evidence from the Federal Trade Commission ("FTC") noting "thousands of customer complaints against Vehicle Services."[16] Plaintiff states that "Palmer cannot simply ignore Vehicle Services' illegal robocalling and argue that it is not the principal."[17]

> According to Palmer,
>
> [Palmer] is engaged primarily in the business of handling claims by policy holders and customer service for policy holders. Palmer does not market or sell the contracts it administers, and the companies that do [] do so through its affiliate N.C.W.C., Inc. to whom Palmer has contractually authorized the right to enter into commercial arrangements under which the third-parties are authorized to sell Palmer-administered contracts.[18]

Further, Palmer states that it "has no role in the operations of any third-party telemarketing company authorized to sell products Palmer administers,"[19] and that "[a]ny allegation by Plaintiff that a telemarketing call associated with a Palmer product was made 'on behalf of' or with 'implied, actual, or apparent authority' of Palmer is mistaken because Palmer does not confer that

---

[11] *Id*. at ¶ 4-6; Doc. No. 10, p. 2.
[12] Doc. No. 10, p. 7.
[13] Javitch Decl., Doc. No. 10-2, ¶¶ 7, 9.
[14] *Id*. at ¶ 8.
[15] Doc. No. 10, p. 7.
[16] *Id*.; *See* FTC Correspondence and FOIA Request, Doc. No. 10-2, p. 4.
[17] *Id*.
[18] Doc. No. 8-1 ¶ 5.
[19] (*Id*. at ¶ 14)

authority on telemarketing companies and does [sic] not control (or have the right to control) those companies' telemarketing practices"[20]

## Legal Standard

### 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court lacks personal jurisdiction over the defendant. After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2018 U.S. Dist. LEXIS 101757, at *4 (E.D. Tex. June 19, 2018) (Mazzant, J.) (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989))). "To satisfy that burden, the party seeking to invoke the court's jurisdiction must 'present sufficient facts as to make out only a prima facie case supporting jurisdiction,' if a court rules on a motion without an evidentiary hearing." *Id*. (quoting *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003)); *WNS, Inc.*, 884 F.2d at 203.

> A court conducts a two-step inquiry when a defendant challenges personal jurisdiction: (1) '[f]irst, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant;' and (2) 'second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.'

*Lander v. Laroque*, No. 4:18-CV-00811-ALM-CAN, 2019 U.S. Dist. LEXIS 212460, at *5-6 (E.D. Tex. 2019) (citing *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993)). Because the Texas long-arm statute extends to the limits of federal due process, the normally two-step determination of personal jurisdiction folds into one analysis. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Thus, the court must consider whether the exercise of

---

[20] (*Id*. at ¶ 15)

4

jurisdiction is consistent with the guarantee of due process under the Constitution. The requirements of constitutional due process protect a person from being subject to a forum with which he or she has no meaningful "contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Consequently, a plaintiff must demonstrate that a nonresident defendant has "purposefully availed itself" of forum-state benefits through "establishing minimum contacts with the forum state." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). It must have been foreseeable to the defendant that its "conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Personal jurisdiction may be general—meaning the defendant's business contacts with the forum state are "continuous and systematic"—or specific—meaning that the claims arose out of or related to the defendant's contacts with the forum state. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 414 n.9, 414 n.8 (1984)).

General personal jurisdiction exists when a defendant's contacts with the forum state are "so 'continuous and systematic' as to render them essentially at home in the forum state." *Lander*, 2019 U.S. Dist. LEXIS 212460, at *6 (citing *Lahman*, 2018 U.S. Dist. LEXIS 101757, at *5 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014))). When a defendant's contacts with the forum state are less extensive than that required for a court to exercise general jurisdiction, the court may still exercise specific jurisdiction where a "nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan*, 615 F.3d

364, 367 (5th Cir. 2010) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517

F.3d 235, 243 (5th Cir. 2008)).

> The specific personal jurisdiction inquiry is conducted through a three-step analysis:
>
> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd.*, 768 F.3d at 433. "Establishing a defendant's minimum contacts with the

forum state requires contacts that are more than 'random, fortuitous, or attenuated, or of the

unilateral activity of another party or third person.'" *Lander*, 2019 U.S. Dist. LEXIS 212460, at

*11 (quoting *Burger King Corp.*, 471 U.S. at 475).

### 12(b)(6) Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

court credits allegations in plaintiff's complaint as true except to the extent allegations are

controverted by a defendant's affidavits. *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d

387, 2022 U.S. Dist. LEXIS 16164, at *4-5 (E.D. Tex. 2022). The Court does not need to credit

conclusory allegations, even when uncontroverted. *Applied Food Scis., Inc. v. New Star 21, Inc.*,

No. W-07-CA-359, 2009 WL 9120113, at *2 (W.D. Tex.  2009) (citing *Panda Brandywine Corp.*

*v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001)).

The Court utilizes a "two-pronged approach" in considering a motion to dismiss.  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 679 (2009).  First, the Court identifies and excludes legal conclusions that

"are not entitled to the assumption of truth."  *Id.*  Second, the Court considers the remaining "well-

pleaded factual allegations."  *Id.*  The Court must accept as true all facts alleged in a plaintiff's

complaint, and the Court views the facts in the light most favorable to a plaintiff. *In re Katrina*

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).   A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level."   *Id.* (internal quotations omitted).   In other words, the Court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," fail to state a claim for which relief can be granted.   *Iqbal*, 556 U.S. at 663.

## Analysis

Palmer argues that Plaintiff does not assert that it directly placed the calls, nor does Plaintiff present factual evidence that would allow the Court to impute a third party's alleged placing of the phone calls to Palmer.[21] Palmer's position that it did not place the calls and that the same cannot be imputed to it under federal common law agency principles largely underlies Palmer's lack of personal jurisdiction and failure to state a claim arguments. Palmer asserts that it "lacks any ties to Texas" that could support the Court's exercise of personal jurisdiction over it because it did not place the calls and did not direct or control any other entity or person to do so on its behalf.[22] Therefore, Palmer concludes that it has no meaningful connections to the Plaintiff in the state of Texas.[23] Similarly, Palmer argues that Plaintiff has not alleged that it initiated the calls in question and that Plaintiff cannot plead factual evidence allowing the Court to infer an agency relationship between the person or entity who placed the calls and Palmer such that the Plaintiff has failed to state a claim against Palmer.[24] Because Palmer raises an agency issue that largely forms the basis

---

[21] Doc. No. 8, p. 2.
[22] *Id.* at 1-2.
[23] *Id.* at 9.
[24] *Id.* at 13-14.

for its Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), the Court first addresses Palmer's agency argument.

## I. Agency Theories of Liability

Palmer raises an agency issue that forms the basis of its 12(b)(2) and 12(b)(6) motions. For a plaintiff to prove an agency relationship under Texas law, "evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Horton v. Sunpath, Ltd.*, No. 3:20-CV-1884-B-BH, 2021 U.S. Dist. LEXIS 50538 at *11 (N.D. Tex. 2021) (hereinafter "*Sunpath*"). "The actions of an agent may establish minimum contacts over a principal." *Id.* (quoting *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009). In the state of Texas, the law of actual authority includes both express and implied authority. *Pasant v. Jackson Nat. Life Ins. Co.*, 52 F.3d 94, 97 (5th Cir. 1995). Express actual authority exists where the principal has clearly expressed to the agent the act principal desires to be undertaken.[25] Implied actual authority exists "where there is no proof of express authority, but appearances justify a finding that in some manner the agent was authorized; in other words, there is circumstantial proof of actual authority."[26] Implied actual authority may arise in a number of ways, including by indication "from the principal that the agent possesses the authority," "from being the necessary implication of an expressly authorized act," and "from a previous course of dealing." *Id.*

Palmer asserts that Plaintiff fails to allege any factual evidence that would allow a reasonable inference of an agency relationship between Palmer and Vehicle Services or to any John Doe hired by Vehicle Services to illegally telemarket on Palmer's behalf.[27] Palmer highlights

---

[25] *Id.*

[26] *Id.* (quoting *City of San Antonio v. Aguilar*, 670 S.W.2d 681, 683-84 (Tex. App. 4 Dist. 1984)).

[27] Doc. No. 8, p. 2.

that Plaintiff alleges the John Doe defendant is the only party that directly placed any of the calls forming the basis of Plaintiff's Complaint.[28] Palmer also notes that Plaintiff has presented no evidence that Palmer directed or controlled John Doe defendant's actions nor has Plaintiff specified the relationship between Palmer and Vehicle Services such that the Court may infer that a principal-agent relationship exists.[29] Specifically, Palmer argues that actual authority does not exist in this case, as Plaintiff has failed to allege facts to show that explicit instructions were provided by the principal to the purported agent.[30] Palmer also contends that no apparent authority exists in this case because Plaintiff makes no allegations regarding any representations made to the Plaintiff by Palmer as the alleged principal.[31] Palmer characterizes apparent authority as requiring a showing by Plaintiff that he reasonably believed the calling party was the agent of the purported principal "based on some representation from the principal"[32] Finally, Palmer argues that there was no ratification of the conduct of the third party because a purported principal simply cannot ratify conduct that it was unaware of, and Plaintiff has not provided evidence that Palmer, as the purported principal, was aware of an alleged agent's wrongful conduct in telemarketing calls.[33]

Palmer points to ¶ 49-52 of Plaintiff's First Amended Complaint[34] in support of its position, where Plaintiff states:

¶ 49 "Palmer and Vehicle Services are also directly liable under the TCPA for outsourcing their telemarketing to John Doe."

---

[28] *Id*. at 4.
[29] *Id*.
[30] *Id*. at 18.
[31] *Id*. at 19.
[32] *Id*. (emphasis omitted).
[33] *Id*. at 20.
[34] (Doc. No. 5)

¶ 52 "Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify the exact parties who called its phone. It could have been Palmer, Vehicle Services, or some other unknown company John Doe."

As further support, Palmer discusses *Sunpath*, a similar case involving a Palmer competitor.[35] In *Sunpath*, the plaintiff filed suit alleging violations under the TCPA and the TBCC.[36] The Court stated that "[plaintiff] has not alleged that Defendant directed [the purported agent] to take any action with respect to Texas, or that it assigned any tasks to [the purported agent] concerning Texas, and that it controlled or had the means to control such a task."[37] The Court concluded that the plaintiff had therefore failed to make a prima facie showing of specific jurisdiction against the defendant and dismissed plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(2).[38]

However, this case is distinguishable from *Sunpath*. In *Sunpath*, the plaintiff was attempting to sue Sunpath  *rather than* an apparently *valid* company Sunpath had hired to do its marketing and customer-outreach.[39] The *Sunpath* plaintiff was unable to present evidence to show that Sunpath had adequate control over the company it had hired to justify the existence of a principal-agent relationship between the two entities.[40] Here, Plaintiff Johnson is suing Palmer *and* the apparent shell company, Vehicle Services, Palmer alleges to have hired to do its marketing and customer outreach. Here, Plaintiff points out that dismissing complaints under the current set of facts would "allow companies to evade TCPA liability by creative contracting."[41] Plaintiff has

---

[35] *See Sunpath* at *11.
[36] *Id*. at *2-3.
[37] *Id*. at *11.
[38] *Id*. at *13.
[39] *Id*. at *10-11.
[40] *Id*. at *11-13.
[41] Doc. No. 10, p. 5-6; *See McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116 at *9 (E.D.N.Y. 2014).

been unable to serve Vehicle Services as it is an unregistered entity with its only known address being the location of a Michigan UPS Store.[42] In further support of its allegation that Vehicle Services is merely acting as a shell company on behalf of Palmer, Plaintiff points to a lengthy history of thousands of complaints against Vehicle Services that has been documented by the FTC.[43]

In contrast, Plaintiff cites *Horton v. Palmer Administrative Servs.*, No. 3:20-cv-3526-X-BN, 2021 WL 8014654 (N.D. Tex. 2021) ("*Horton*"), wherein Palmer was sued under nearly identical facts as the current case. The Court stated that although Palmer did not directly call Horton, "Palmer can still be liable under the TCPA if the calls were made on behalf of Palmer."[44] In *Horton*, the plaintiff traced the calls to Palmer as a result of: (1) plaintiff's purchasing a warranty allegedly from Palmer on the ninth call plaintiff received; and (2) plaintiff's allegedly being "hung up on" on the tenth call he received after he was transferred to a warranty specialist who "realized [that Horton] had already purchased a warranty from Palmer."[45] Regarding the same agency contentions Palmer is again asserting in the current case, the *Horton* Court summarized that

> [plaintiff] alleges that he bought a warranty from Palmer as a result of a call that [plaintiff] received from the third party and separately alleges that, on the next call, the third party knew that [plaintiff] had purchased a warranty from Palmer and therefore hung up on [him]. These alleged facts are enough, at this stage [pre-discovery motion to dismiss], to allow the Court to infer an agency relationship between Palmer and the third party who called Horton. Horton has thus alleged that his injury is traceable to the challenged conduct of Palmer.[46]

Similarly, here, Plaintiff alleges he purchased a vehicle warranty from Palmer as the result of a call received from either Palmer or from a third party at Palmer's direction.[47] Plaintiff has

---

[42] Javitch Decl., Doc. No. 10-2, ¶ 8.
[43] FTC Correspondence and FOIA Request, Doc. No. 10-2, p. 4.
[44] *Id.* at *6; *See* Doc. No. 10, p. 6.
[45] *Id.*
[46] *Id.* at *7.
[47] *See generally* Johnson Decl., Doc. No. 10-1.

presented a sworn declaration detailing his alleged purchase of the Palmer vehicle service plan.[48] Plaintiff has provided the alleged facts sufficient to allow the Court to infer that implied actual authority exists between Palmer, the purported principal, and Vehicle Services, the purported agent at the pre-discovery stage of the litigation.[49] That is, Plaintiff has pleaded enough facts indicating the existence of an agency relationship such that a claim to relief is "plausible on its face." *See Twombly*, 550 U.S. at 570.

## II.     Personal Jurisdiction

Palmer asserts that Plaintiff has not provided a basis for which the Court may exercise personal jurisdiction over it, general or specific.[50]

### A.   *General Personal Jurisdiction*

For corporations, the place of incorporation and the principal place of business are "paradigm bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137 (internal citations omitted). Palmer is a Delaware corporation with its principal place of business in New Jersey.[51] Additionally, there is no evidence in the record, nor has the Plaintiff alleged, that Palmer's "affiliations with the state are so 'continuous and systematic' as to render [it] essentially at home in [Texas]." *See Daimler AG*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Because there is no evidence that Palmer has the requisite 'continuous and systematic' contacts with Texas that would render it 'essentially at home,' and because Palmer is a Delaware

---

[48] *Id*.
[49] *See id*.
[50] Doc. No. 8, p. 1.
[51] Doc. No. 8, pp. 1-2, 4, 8-9.

corporation with its principal place of business in New Jersey, the Court cannot appropriately exercise general personal jurisdiction over Palmer in this case.[52]

### B. Specific Personal Jurisdiction

The specific personal jurisdiction analysis has three inquiries: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Monkton Ins. Servs., Ltd.*, 768 F.3d at 433. Palmer asserts that this Court lacks specific personal jurisdiction over it because the first two prongs of the analysis cannot be satisfied.[53] Palmer also relies on the argument that it had no role in making the phone calls at issue to support its proposition that the third prong of the inquiry (traditional notions of fair play and substantial justice) cannot be satisfied.[54] Palmer's arguments pertaining to its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), appear to be restatements of Palmer's prior agency contentions masquerading as objections to specific personal jurisdiction.

Here, Plaintiff has alleged sufficient facts indicating the existence of an agency relationship between the purported principal, Palmer, and its purported agent, Vehicle Services such that Plaintiff's claim to relief is plausible on its face. *See Twombly*, 550 U.S. at 570. Therefore, Palmer purposely directed its activities to the Plaintiff in the state of Texas through the acts of Vehicle Services or a John Doe hired by Vehicle Services with the phone-calls at issue placed to Texas residents, satisfying the first prong of the inquiry. *See Monkton Ins. Servs., Ltd.*, 768 F.3d at 433.

---

[52] *See* Doc. No. 8, pp. 1-2, 4, 8-9; *See Daimler AG*, 571 U.S. at 127.
[53] Doc. No. 8, p. 9.
[54] *Id.* at 13.

Plaintiff's causes of action for violations of the TCPA, TCPA regulations, and the TBCC, arise out of said purported phone calls to the Plaintiff, satisfying the second prong of the inquiry. *Id.* And the exercise of personal jurisdiction over Palmer in this case would be fair and reasonable as Palmer financially benefitted through the alleged acts of its purported agent in making the calls to Plaintiff. *Id.*; *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) ("Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state."); *See also Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 554 (S.D. Tex. 2021) (held that personal jurisdiction existed over defendant wherever defendant's robocalls reached consumers when robocalls were made at random because defendant had purposefully availed itself of that state's laws). Plaintiff has sufficiently shown that Palmer is subject to specific personal jurisdiction, and accordingly, the Court recommends denying Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2).

## III.   Legal and Factual Sufficiency of the Pleading

Palmer makes the following arguments that one or more of Plaintiff's claims must be dismissed for failure to state a cognizable claim pursuant to Federal Rule of Civil Procedure 12(b)(6): (1) that 47 CFR § 64.1200(d) only applies to entities that initiate calls for telemarketing purposes, and that Palmer is not the call initiator; (2) that 47 CFR § 64.1200(d) only applies to calls made to residential telephone subscribers; (3) that Plaintiff has not shown the requisite actual economic damages as required under Tex. Bus. & Comm. Code § 302[55] and that § 302.101 only applies to entities "actually making calls"[56]; (4) that TBCC § 305.053 claim fails because where Plaintiff's underlying TCPA claims fail, Plaintiff's TBCC § 305.053 claims also fail.[57]

---

[55] (Doc. No. 8, p. 25)
[56] (*Id.* at 24)
[57] (*Id.* at 23)

Palmer's first argument mirrors its prior agency contentions that Palmer did not "initiate" the alleged calls at question and that Plaintiff has not provided adequate factual evidence allowing for the inference of an agency relationship tying Palmer to the calls.[58] For the reasons discussed prior, this argument fails. Plaintiff has alleged an adequate factual basis for the Court to infer a principal-agent relationship between Palmer and Vehicle Services. *See Horton* at *7. "A seller…may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *In re Dish Network, LLC*, 28 FCC Red. 6574, 6582 ¶ 24 (2013).

Palmer's second argument is that the TCPA pursuant to 47 U.S.C. § 227(c)(5) as codified by the Federal Communication Commission's ("FCC") 47 C.F.R. § 64.1200(d) applies only to residential phones, not calls received on cell phones.[59] 47 C.F.R. § 1200(d) states that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that entity." Therefore, Palmer argues that the private right of action created pursuant to 47 U.S.C. § 227(c)(5) is limited to redress for violations of 47 C.F.R. § 64.1200(d) that concern residential telephone subscribers. *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102449, at *10 (E.D. Tex. Apr. 30, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 102054 (E.D. Tex. June 19, 2019) (hereinafter "*Politi*"); *See also Bates v. I.C. Sys.*, 2009 U.S. Dist. LEXIS 96488 at *3 (W.D.N.Y. 2009) (The TCPA differentiates between calls made to cellular and residential lines, and cellular telephone calls are governed by 47 U.S.C. § 227(b)(1)(A)).

---

[58] *Id*. at 18.
[59] Doc. No. 8, p. 22.

Many courts in the Fifth Circuit that have recently considered violations of 47 C.F.R. § 64.1200(d) regarding alleged calls received on plaintiffs' cell phones have determined that the regulations do not encompass cellular phones and have accordingly, dismissed those claims. *Politi* at *10 (The private right of action created by 47 U.S.C. § 227(c)(5) is "limited to redress for violations of the regulations that concern residential telephone subscribers.") (Nowak, J.); *Cunningham v. Britereal Mgmt.*, No. 4:20-CV-144-SDJ-KPJ, 2020 U.S. Dist. LEXIS 236135, at *16 (E.D. Tex. Nov. 20, 2020) (Priest Johnson, J.), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 235956 (E.D. Tex. Dec. 16, 2020) (same); *Cunningham v. Air Voice, Inc.*, No. 4:19-CV-00096-ALM-CAN, 2020 U.S. Dist. LEXIS 51585, at *15 (E.D. Tex. Feb. 14, 2020) (Nowak, J.), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 50355 (E.D. Tex. Mar. 24, 2020) (same); *Cunningham v. Creative Edge Mktg. LLC*, No. 4:19-CV-00669-ALM-CAN, 2021 U.S. Dist. LEXIS 126863, at *11 (E.D. Tex. June 16, 2021) (Nowak, J.), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 134443 (E.D. Tex. July 20, 2021) (same); *Callier v. Greensky, Inc.*, No. EP-20-CV-00304-KC, 2021 U.S. Dist. LEXIS 126769, at *14 (W.D. Tex. May 10, 2021) ("Plaintiff does not cite—and the Court is not aware of—any authority that has found § 64.1200(d)(1) applicable to cellphones.") (Cardone, J.).

Yet, other courts in the Fifth Circuit have determined that calls to a cell phone may be construed as being made to residential subscribers. *Hunsinger v. Buyers*, No. 3:21-CV-1598-D, 2022 U.S. Dist. LEXIS 32319, at *8 (N.D. Tex. Feb. 24, 2022) (motion to dismiss denied because plaintiff's cell phone was "primarily used for personal, family, and household use," and was, thus, sufficient to constitute a residential telephone) (Fitzwater, J.); *Powers v. One Techs., LLC*, No. 3:21-CV-2091, 2022 U.S. Dist. LEXIS 134034, at *7 (presumes that wireless subscribers who ask to be put on the national-do-not-call list are 'residential subscribers' under § 64.1200(d) for

purpose of motion to dismiss) (Starr, J.); *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 U.S. Dist. LEXIS 223278, at \*26 (W.D. Tex. Nov. 17, 2021) (47 C.F.R. § 64.1200(d) "applies to any cell phone being used as a residential phone") (Briones, J.); *Callier v. Capital*, No. EP-21-CV-00011-DCG, 2021 U.S. Dist. LEXIS 126447, at \*8-11 (W.D. Tex. Apr. 22, 2021) (default judgment for plaintiff granted on claims under § 227(c)(5) and § 64.1200(d) when calls had been received on plaintiff's cellphone[60]) (Guaderrama, J.); *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020) (rejecting defendants' contention that "cell phones, as a matter of law, cannot be residential subscribers" in the context of a motion to certify a class) (Pittman, J.).

The FCC addressed this issue in its 2003 Order regarding the TCPA ("2003 Order"). *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (FCC June 26, 2003). In the 2003 Order, "the FCC stated that it would presume that wireless numbers registered on the national do-not-call registry were residential numbers." *Callier v. Nat'l United Grp., LLC*, 2021 U.S. Dist. LEXIS 223278, at \*25 (The 2003 Order "extended the full coverage of the TCPA to cell phones."). Specifically, the 2003 Order stated that

> the national [do-not-call] database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA and the Do-Not-Call Act. In so doing, we agree with the FTC and several commenters that wireless subscribers should not be excluded from the protections of the TCPA, particularly the option to register on a national-do-not-call list.

18 FCC Rcd. 14014 at \*59. Additionally, the FCC notes that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." *Id*. at \*63.

---

[60] Defendant did not raise the argument that calls to cell phones did not qualify as calls to residential phones.

The majority of the persuasive precedent holds 47 C.F.R. § 64.1200(d) does not encompass cell phones. *See supra*. Assuming, *arguendo*, the Court were to view cell phones to constitute residential phones under § 64.1200(d), Plaintiff failed to plead that his cellphone was used as a residential phone.[61] *See Callier v. Nat'l United Grp., LLC*, 2021 U.S. Dist. LEXIS 223278, at *26; *See also Hunsinger*, 2022 U.S. Dist. LEXIS 32319, at *8. Even if a court determines that cell phones can qualify as residential phones under § 64.1200(d), the regulation "applies to any cell phone *being used as* a residential phone." *Callier v. Nat'l United Grp., LLC*, 2021 U.S. Dist. LEXIS 223278, at *26 (emphasis added). Plaintiff pled no facts pertaining to how his cellular phone was used. As such, the Court recommends Plaintiff's second, third, and fourth claims, alleging violations of §§ 64.1200(d)(1), 64.1200(d)(2), and 64.1200(d)(4), respectively, be dismissed.

Palmer's third argument is that Plaintiff's claim for liability under Texas Business and Commerce Code Section 302.101 fails to state a claim on two grounds. First, Section 302.101 only applies to entities "actually making calls."[62] Second, Plaintiff has not plausibly alleged actual economic damages as required under Tex. Bus. & Comm. Code § 302.[63]

Palmer's first ground pertaining to Plaintiff's claim under Section 302.101 is another agency argument. Palmer states that "[t]he plain language of [Sec. 302.101] shows that this refers only to the party actually making the calls, not a third-party whose products or services are being sold with no involvement in making any call."[64] For reasons already discussed, this argument fails as Plaintiff has presented sufficient factual allegations at this stage for the Court to infer the

---

[61] Plaintiff failed to plead that his cell phone was used for residential purposes in pleadings and Court-ordered briefing regarding 47 C.F.R. § 64.1200(d). *See* Doc. Nos. 5, 10, 16.
[62] Doc. No. 8, p. 24.
[63] *Id*. at 25.
[64] *Id*. at 24 (emphasis omitted).

existence of a principal-agent relationship between Palmer and Vehicle Services and impute the alleged conduct of Vehicle Services to Palmer. *See supra*.

As to Palmer's second ground that Plaintiff has not plausibly pled actual economic damages as required, Palmer points to Plaintiff's allegations of "annoyance, intrusion upon seclusion, and wasted time."[65] To bring a private right of action for violation of Section 302.101 of the Tex. Bus. & Comm. Code, the act must cause "economic damages or damages for mental anguish." *See* Tex. Bus & Comm. Code § 17.50. A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Plaintiff alleges recurring phone calls to Plaintiff's cell phone wherein prerecorded voice messages played upon answering.[66] Plaintiff's allegation that Plaintiff sustained "annoyance, intrusion on privacy, and wasted time" is sufficient to plausibly allege that Plaintiff sustained "economic damages or damages for mental anguish." *Marquis v. OmniGuide, Inc*., No. 3:09-CV-2092-D, 2011 WL 321112 at *7 (N.D. Tex. 2011) ("[Defendant] is not obligated at the pleading stage to produce evidence of direct pecuniary loss; it need only plead enough facts to state a claim to relief that is plausible on its face." (internal citations omitted)). Therefore, Plaintiff has plausibly pled compensable damages under Tex. Bus. & Comm. Code § 17.50, and Palmer's third argument fails.

Palmer's fourth argument that where Plaintiff's TCPA claims fail, Plaintiff's claims under Sec. 305.053 of the Texas Business and Commerce Code must also fail, rests on the requisite assumption that Plaintiff's TCPA claims fail.[67] Because the Court has not determined Plaintiff's underlying TCPA claims fail as a matter of law, the Court rejects Palmer's fourth basis for

---

[65] *Id*. at 25.
[66] Doc. No. 5, p. 5.
[67] Doc. No. 8, p. 23.

dismissal. *See Politi* at \*20 ("Because Plaintiff's underlying (federal) TCPA section 227(b) claims as to vicarious liability should remain, Plaintiff's state TCPA claim under § 305.053 should also move forward at this time.").

## Conclusion

Based on the foregoing, the Court **RECOMMENDS** that Defendant Palmer Administrative Services, Inc.'s Motion to Dismiss (Doc. No. 8) pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) be **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court **RECOMMENDS GRANTING** Palmer's Motion to Dismiss as to Plaintiff's second, third, and fourth claims alleging violations of 47 C.F.R. §§ 64.1200(d)(1), 64.1200(d)(2), and 64.1200(d)(3), respectively, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court further **RECOMMENDS DENYING** Palmer's Motion to Dismiss as to all other grounds.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 20th day of October, 2022.

_____

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE